John M. Mejía, 13965
John.Mejia@chrisjen.com
Anna P. Christiansen
Anna.Christiansen@cjlaw.com
CHRISTENSEN & JENSEN, P.C.
257 East 200 South, Suite 1100
Salt Lake City, Utah 84111
Telephone: (801) 323-5000
Facsimile: (801) 355-3472
*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF UTAH

| | |
|---|---|
| ERIC S., individually and on behalf of A.S., a minor,<br><br>Plaintiff,<br><br>v.<br><br>UNITEDHEALTHCARE INSURANCE COMPANY,<br><br>Defendant. | **COMPLAINT**<br><br>Case No. 2:26-cv-00817 |

Plaintiff Eric S., individually and on behalf of A.S., a minor ("Plaintiff), by and through undersigned counsel, hereby complain against Defendant UnitedHealthcare Insurance Company ("United"), alleging in totality and alternatively as follows:

**INTRODUCTION**

Plaintiff Eric S. enrolled in a health plan through his employer that was fully insured by United and enrolled their child A.S. as a beneficiary. A.S. received over a year of mental health treatment at Waterfall Canyon Academy ("Waterfall"). For the first several months, United acknowledged that A.S.'s treatment was medically necessary but wrongly refused to cover A.S.'s

treatment at in-network rates. For the final nine or so months or so of A.S.'s treatment at Waterfall, United denied any payment, wrongly asserting that the treatment was not medically necessary. Because of United's wrongful denials, Plaintiff was forced to appeal several times. Having exhausted the appeals process for all the claims, Plaintiff is now obliged to bring this action to obtain the benefits wrongly denied them.

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Eric S. and A.S., a minor are residents of Phoenix, Arizona. Eric S. is A.S.'s father.

2. Through his employment, Eric S. was, at all times relevant hereto, a participant in the UnitedHealthcare Choice Plus health insurance plan (the "Plan").

3. A.S. is Eric S.'s dependent. As Eric S.'s dependent, A.S. was, at all times relevant hereto, a beneficiary under the Plan.

4. Defendant UnitedHealthcare Insurance Company ("United") fully insured the Plan, as well as handling the day-to-day administration of the Plan, including making benefit decisions, paying claims, and processing benefit claims and appeals.

5. The Plan is a welfare benefits plan under 29 U.S.C. § 1001 *et. seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA").

6. United is a fiduciary of the Plan as defined by ERISA.

7. United contracted with United Behavioral Health ("UBH") to act as United's agent with respect to the processing and appeals of claims for mental health and substance abuse treatment under the Plan. UBH is located in Salt Lake City, Utah.

8. This lawsuit is brought to obtain an order requiring United to pay or reimburse expenses incurred during A.S.'s treatment at Waterfall. The remedies Plaintiffs seek under ERISA and the Plan are for benefits due under the terms of the Plan and pursuant to 29 U.S.C. § 1132(a)(1)(B); for appropriate equitable relief under 29 U.S.C. § 1132(a)(3) based on United' violation of the Mental Health Parity and Addiction Equity Act of 2008 (the "MHPAEA"); an award of pre-judgment interest; and an award of fees and costs pursuant to 29 U.S.C. § 1132(g). Plaintiff does not seek double recovery.

9. This Court has jurisdiction over this case under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

10. Venue is appropriate under 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391(c) based on ERISA's provisions regarding nationwide service of process and venue and because Utah is the location where the services at issue were provided to A.S. and billed to United and where United's agent UBH processed the claims and appeals at issue.

## FACTUAL ALLEGATIONS

*Coverage Under The Plan*

11. To describe benefits and coverage under the Plan, United issued a document titled "United Healthcare Insurance Company, UnitedHealthcare Choice Plus, Certificate of Coverage, Riders, Amendments, and Notices" effective April 1, 2024 (the "Certificate").

12. Upon information and belief, the Certificate, together with any summaries of material modifications, constitute the official summary plan description for the Plan.

13. In general, the Plan provides benefits when a health care service or supply is a "a Covered Health Care Service: that is "is Medically Necessary, or if the supplies/services are mandated by state or federal law."[1]

14. The Plan defines "Medically Necessary" as follows:

> Medically Necessary - health care services that are all of the following as determined by us or our designee:
>
> - In accordance with Generally Accepted Standards of Medical Practice.
> - Clinically appropriate, in terms of type, frequency, extent, service site and duration, and considered effective for your Sickness, Injury, Mental Illness, substance-related and addictive disorders, disease or its symptoms.
> - Not mainly for your convenience or that of your doctor or other health care provider.
> - Not more costly than an alternative drug, service(s), service site or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of your Sickness, Injury, disease or symptoms.
>
> *Generally Accepted Standards of Medical Practice* are standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community, relying primarily on controlled clinical trials, or, if not available, observational studies from more than one institution that suggest a causal relationship between the service or treatment and health outcomes.
>
> If no credible scientific evidence is available, then standards that are based on Physician specialty society recommendations or professional standards of care may be considered. We have the right to consult expert opinion in determining whether health care services are Medically Necessary. The decision to apply Physician specialty society recommendations, the choice of expert and the determination of when to use any such expert opinion, shall be determined by us.

[1] Certificate at 10.

> We develop and maintain clinical policies that describe the *Generally Accepted Standards of Medical Practice* scientific evidence, prevailing medical standards and clinical guidelines supporting our determinations regarding specific services. These clinical policies (as developed by us and revised from time to time), are available to Covered Persons through www.myuhc.com or the telephone number on your ID card. They are also available to Physicians and other health care professionals on UHCprovider.com.[2]

15. The Plan provides defines "Mental Health Care Services as: "services for the diagnosis and treatment of those mental health or psychiatric categories that are listed in the current edition of the *International Classification of Diseases section on Mental and Behavioral Disorders* or the *Diagnostic and Statistical Manual of the American Psychiatric Association*. The fact that a condition is listed in the current edition of the *International Classification of Diseases section on Mental and Behavioral Disorders* or *Diagnostic and Statistical Manual of the American Psychiatric Association* does not mean that treatment for the condition is a Covered Health Care Service.[3]

16. The Plan defined "Mental Illness" as "those mental health or psychiatric diagnostic categories that are listed in the current edition of the *International Classification of Diseases section on Mental and Behavioral Disorders* or *Diagnostic and Statistical Manual of the American Psychiatric Association*. The fact that a condition is listed in the current edition of the *International Classification of Diseases section on Mental and Behavioral Disorders* or *Diagnostic and Statistical Manual of the American Psychiatric Association* does not mean that treatment for the condition is a Covered Health Care Service."[4]

---

[2] Certificate at 75-76.
[3] Certificate at 76.
[4] Certificate at 76.

17. The Plan described covered services for mental health as follows;

> Mental health and chemical dependency services covered by the Plan Mental Health Care and Substance-Related and Addictive Disorders Services include those received on an inpatient or outpatient basis in a Hospital, an Alternate Facility or in a provider's office. All services must be provided by or under the direction of a behavioral health provider who is properly licensed and qualified by law and acting within the scope of their licensure. Mental Health Care Services and Substance-Related and Addictive Disorders Services received from a Primary Care Physician are subject to the *Physician's Office Services - Sickness and Injury* cost share as noted in the *Schedule of Benefits* and not the *Mental Health Care and Substance-Related and Addictive Disorders Services* cost share.
>
> Benefits include the following levels of care:
>
> • Inpatient treatment.
>
> • Residential Treatment.
>
> …[5]

18. The Plan contained a "Schedule of Benefits" setting out the amounts that Plan participants and beneficiaries would be responsible for in terms of co-payments and/or co-insurance for covered services. For "Mental Health Care Services and Substance-Related and Addictive Disorders Services," when a service was "Network" and "Inpatient," the co-payment/co-insurance responsibility was "10%."[6] When a service was "Out-of-Network" and "Inpatient," the co-payment/co-insurance responsibility was "50%."[7]

19. The Plan contained the following provision:

> **Health Care Services from Out-of-Network Providers Paid as Network Benefits**

---

[5] Certificate at 20.
[6] Certificate at 103-104.
[7] Certificate at 103-104.

> If specific Covered Health Care Services are not available from a Network provider, you may be eligible for Network Benefits when Covered Health Care Services are received from out-of-Network providers. In this situation, your Network Physician will notify us and, if we confirm that care is not available from a Network provider, we will work with you and your Network Physician to coordinate care through an out-of- Network provider.[8]

20. The Plan contained an annual deductible of $500 per person, not to exceed $1,000 for all covered persons in a family for in-network expenses: for out-of-network expenses, the annual deductible was $10,000 per person, not to exceed $20,000 for all covered persons in a family. [9]

21. The Plan contained an out-of-pocket limit of $2,000 per covered person, not to exceed $4,000 for all covered persons in a family for in-network expenses: for out-of-network expenses, the out-of-pocket limits were $20,000 per covered person not to exceed $40,000 for all covered persons in a family. [10]

*Background of A.S.'s medical issues and treatment*

22. A.S. was diagnosed with Disruptive Mood Dysregulation Disorder (F34.81); Major Depressive Disorder, Recurrent, Severe (F.33.2); Parent-Child Relational Problem (Z62.82); Oppositional Defiance Disorder (F90.2), Attention Deficit Hyperactivity Disorder, Combined (F90.2), and autism spectrum disorder (F84.0) under the criteria described in the DSM-5.

23. Starting at around 13 years of age, A.S., among other things, began to engage in increasingly aggressive and self-harmful behaviors and frequently became dysregulated. A.S.

---

[8] Certificate at 123.
[9] Certificate at 89.
[10] Certificate at 90.

also struggled with, among other things, depression, anxiety, disordered eating, and hearing and seeing things.

24. A.S.'s parents worked with educational and mental health professionals to find treatment that best fit A.S.'s needs and located Waterfall.

25. Waterfall is, and was at all times relevant hereto, a behavioral health treatment facility in Ogden, Utah.

26. Waterfall is, and was at all times relevant hereto, licensed by the State of Utah to provide these behavioral health services to adolescents and accredited by a national organization.

27. A.S. received treatment for the disorders and symptoms mentioned above at Waterfall from September 13, 2024 to November 14, 2025.

28. Waterfall provided A.S. mental health treatment programs that are less intensive than acute hospitalization but more intensive than outpatient therapy, which qualified it as an intermediate or sub-acute behavioral health facility.

29. At all times relevant hereto, Waterfall operated in accordance with the governing Utah state regulations.

30. A.S. benefited from the intensive mental health treatment received at Waterfall.

31. Waterfall submitted charges of $495,300.00 to United on Plaintiff's behalf for the services it provided to A.S. United denied or underpaid those charges.

32. All of A.S.'s treatment at Waterfall was covered by the Plan and United should have paid all of Plaintiff's claims related to that treatment at the in-network level.

*Single Case Agreement Appeal*

33. Before A.S. was admitted to Waterfall, United acknowledged that A.S.'s treatment there was medically necessary.

34. United wrongly determined, however, that it would only cover A.S.'s services at the out-of-network rate, which required Plaintiff to be responsible for co-pays/co-insurance of up to 50%, instead of the in-network rate of 10%.

35. United authorized Plaintiff's claims at the out-of-network rate for A.S.'s dates of service at Waterfall from September 13, 2024 to January 28, 2025.

36. In a form dated November 1, 2024, Waterfall, on Plaintiff's behalf, submitted an appeal of United's refusal to treat Waterfall as if it were in-network for Plaintiff's co-pay/co-insurance purposes. Specifically, the form was United's "Network Gap Exception Request Form." When United decides to grant such a request, it is called a "Single Case Agreement" ("SCA").

37. In that appeal, Waterfall/Plaintiff explained that he could not find a suitable, in-network facility within 50 miles of Plaintiff's home and attached a letter explaining why Waterfall was the best fit for A.S.'s unique needs.

38. In a letter dated December 20, 2024, United, through its agent UBH, denied the appeal. The letter, signed by "JU MD, Behavioral Medical Director and American Board of Psychiatry and Neurology (ABMS)" stated, in relevant part:

> United Behavioral Health (UBH) is responsible for making benefit coverage determinations for mental health and substance use disorder services that are provided by your health plan. The availability of benefit coverage for a service is determined by the terms of your benefit plan. To review information about your specific plan coverage , please refer to the benefit information provided by your health plan.

As requested, I as an UBH employee [sic], have completed an appeal/grievance review on a request we received 12/06/2024. This review included an examination of the following information: case notes, medical records. After fully investigating the substance of the appeal/grievance, including all aspects of clinical care involved in this treatment episode I have determined that benefit coverage is not available for the following reason(s):

We have denied benefit coverage for the following services requested by your provider, Waterfall Canyon Academy: Single Case Agreement for out-of-network Mental Health Residential Treatment Center services from 09/13/2024 forward.

Your provider indicated you were being treated for Autism Spectrum Disorder. This is a condition related to brain development that impacts how a person perceives and socializes with others. You were also being treated for Oppositional Defiant Disorder. This is a condition where a person has recurrent patterns of negative , hostile, or defiant behavior towards authority figures. You were also being treated for Attention Deficit Hyperactivity Disorder, this is a condition where a person has difficulty sustaining their attention and controlling their behavior.

Your request was reviewed. We reviewed the supporting clinical information provided to us from your provider throughout your treatment and the information documented within your clinical case notes. We also reviewed the following documents submitted by you and your providers: Correspondence from Cecily Mitchell and medical records from Waterfall Canyon Academy.

You have coverage for an out-of-network provider. After looking at your case notes and the submitted documentation, the clinical reasons provided do not support an exception to cover an out-of-network provider as if they are in-network because:

-Your condition could have been safely and effectively treated by an available licensed in-network provider, or you could have used your out-of-network benefits.

-A provider/facility search indicates there are 5 in-network adolescent Mental Health Residential Treatment Centers within 10 miles of your home address in Phoenix , AZ.

Please talk to your provider about your care.

39. In a letter dated February 10, 2025, Eric S. sent a letter to United to appeal the denial of his request for an SCA for the relevant dates of service for A.S.'s treatment at Waterfall.

40. Among other things, Eric S.:

a. Quoted language from the Plan's Certificate demonstrating that A.S.'s treatment was a covered service under the Plan;

b. Reminded United that under the Employee Retirement Income Security Act of 1974 (ERISA), he was entitled to a review taking into account all comments, documents, records, and other information he submitted and to response from United that was clear, that specifically stated the reasons for the determination, referenced the plain language on which United's decision was based, and explains what other information he could provide in order to perfect his claims;

c. Requested a physical copy of all documentation used for the initial determination and level one appeal determination, as well as the reviewer's name, credentials and experience;

d. Requested any administrative services agreements that existed;

e. Raised concerns that United could be engaging in a "provider network NQTL" in violation of the MHPAEA by not covering enough intermediate mental health residential treatment providers; and

f. Requested United conduct a comparative parity analysis to determine whether or not the Plan was truly being administered in compliance with the MHPAEA and provide him with physical copies of any documentation used.

41. Eric S. further explained that in its initial denial, United claimed that there were five "in-network adolescent Mental Health Residential Treatment Centers with 10 miles" of Plaintiff's home address that could have provided services to A.S. Eric S. pointed out that United had failed to identify which facilities it asserted could have done so.

42. To attempt to address United's vague assertion, Eric S. provided a list of eleven in-network mental health facilities within ten miles of his and A.S.'s home. For each of the facilities, Eric S. explained why it could not have met A.S.'s mental health treatment needs.

43. Eric S. further explained that when he and his healthcare advocate had contacted UBH for help obtaining psychological testing for A.S., a UBH representative had determined that there were no in-network child or adolescent psychologists available in-network who could provide such testing.

44. In a letter dated February 26, 2025, United informed Plaintiff that United denied his level two appeal.

45. United's letter, signed by "JPF, MD, Behavioral Medical Director, Board Certified Psychiatry & Neurology," described the basis for denying the appeal request as follows:

> United Behavioral Health (UBH) is responsible for making benefit coverage determinations for mental health and substance use disorder services that are provided by your health plan. The availability of benefit coverage for a service is determined by the terms of your benefit plan. To review information about your specific plan coverage, please refer to the benefit information provided by your health plan.

> As requested, I as an UBH employee [sic], have completed an appeal/grievance review on a request we received 02/14/2025. This review included an examination of the following information: Optum Case Notes, Provider Records, Appeal Letter from Provider, and the applicable guideline. No additional clinical records were provided. After fully investigating the substance of the appeal/grievance, including all aspects of clinical care involved in this treatment episode I have determined that benefit coverage is not available for the following reason(s):
>
> Your child's provider's request was denied. We have upheld the denial of coverage of the Single Case Agreement starting 9/13/2024.
>
> Why did we deny your request? Your provider indicated you child [sic] was being treated for Autism Spectrum Disorder. This is a condition related to brain development that impacts how a person perceives and socializes with others. Your child was also being treated for Oppositional Defiant Disorder. This is a condition where a person has recurrent patterns of negative, hostile, or defiant behavior towards authority figures. Your child was also being treated for Attention Deficit Hyperactivity Disorder, this is a condition where a person has difficulty sustaining their attention and controlling their behavior.
> Your request was reviewed. We reviewed the supporting information provided to us by [Plaintiff's healthcare advocate] and your child's provider and the information documented within your child's clinical case notes.
>
> After looking at your case notes and the submitted documentation, there was no additional clinical information or clinical reasons provided for this appeal to support an exception to cover an out-of-network provider as if they are in-network. You have coverage for an out-of- network provider.
>
> Your child's condition could have been safely and effectively treated by an available licensed in-network provider, or you could have used your out-of-network benefits.
> A provider/facility search indicates there were 5 in-network adolescent Mental Health Residential Treatment Centers within 10 miles of your home address in Phoenix, AZ.
>
> Please call us if you have any questions about your benefits. Call the phone number on the back of your insurance card.

46. This denial letter was incorrect and unreasonable, and also fell far short of the full and fair review to which Plaintiff was entitled under ERISA.

47. In its denial letter, United did not indicate that it had honored the request that Eric S. made in his appeal to assign a professional with experience in A.S.'s diagnosed issues.

Though “JPF, MD” was asserted to have been “Board Certified Psychiatry & Neurology,” there was no indication that “JPF, MD” had any relevant experience with the treatment of adolescents living with the diagnoses that A.S. was living with.

48. In its denial letter, United failed to comply with Eric S.’s request to comply with ERISA by providing a response to the appeal that was clear or which explained what other information Plaintiffs could provide in order to perfect their claim, thereby depriving Plaintiffs of the opportunity to perfect their claim.

49. In its denial letter, United did not meaningfully address the history, letter of medical necessity, evaluation, or treatment notes Eric S. provided.

50. United further did not address at all Eric S.’s explanation that none of the in-network facilities within ten miles of his home were adequate for A.S.’s needs. Indeed, United declined to even identify which of the unidentified five facilities United asserted could have done so.

51. In its denial letter, United failed to comply with Eric S.’s request for clear evidence that the Plan was being administered in accordance with the MHPAEA by conducting a parity analysis, thereby denying him of the opportunity to conduct an independent parity analysis himself.

52. United failed to provide any of the requested documents or records, including any administrative services agreements.

53. By letter to United’s agent UBH dated June 18, 2025, Plaintiff requested a review by an independent external reviewer.

54. In violation of the Plan, United/UBH failed to process the external review request or to forward it to the Arizona Department of Insurance. Plaintiff's health advocate made several calls in an attempt to understand the status, but did not receive any explanation of why United/UBH had failed to acknowledge or address the request.

55. As a result of United's failure to honor the Plan's terms requiring coverage of an out-of-network provider at in-network rates, which terms A.S.'s treatment at Waterfall fulfilled, Plaintiff was obliged to pay more than he should have.

56. United's denial of an SCA for the service dates of September 13, 2024 to January 28, 2025 was both a wrongful denial of benefits and a violation of the MHPAEA.

*Full Denial Appeal*

57. With regard to A.S.'s treatment at Waterfall from January 29, 2025 to November 14, 2025, United denied all claims for benefits under the Plan in their entirety, claiming that the treatment was not medically necessary under the Plan.

58. Specifically, in a letter from UBH dated February 4, 2025 signed by "JAK, MD, Behavioral Medical Director, Licensed Psychiatrist," UBH stated:

> United Behavioral Health (UBH) is responsible for making benefit coverage determinations for mental health and substance use disorder services that are provided by your health plan. The availability of benefit coverage for a service is determined by the terms of your benefit plan. To review information about your specific plan coverage, please refer to the benefit information provided by your health plan.
>
> As an UBH employee [sic], I have reviewed the plan for your admission to Waterfall Canyon Academy INC. Based on my review of the available documentation and all information received to date, I have determined that coverage is not available under your benefit plan for the following reason(s):
>
> We have denied benefit coverage for the following services requested by your provider: Mental Health Residential at Waterfall Canyon Academy INC from

01/29/2025. This is where you live at the facility and get 24 hour care for your condition.

You are being treated for Autism spectrum disorder. This is a problem with normal growth and development.

Your request was reviewed. We reviewed the supporting clinical information given to us from your provider throughout your stay, documented within your clinical case notes.

Despite my attempts on 02/03/2025 at 09:37 AM and 11:21 AM Mountain Time, I was not able to reach LCSW HOLLY HINOJOSA at [phone number]. We have denied benefit coverage for the following services requested by your provider: Mental Health Residential at Waterfall Canyon Academy INC from 01/29/2025. This is where you live at the facility and get 24 hour care for your condition.

Based on the clinical information provided, your current condition does not meet the American Association of Community Psychiatrists CALOCUS-CASIl Child and Adolescent Level of Care/Service intensity Utilization System (CALOCUS-CASII) for Level 5, which is applicable for the Mental Health Residential level of care, because: Based on what information we are provided, it looks like you are making positive changes in your behaviors. There are areas that would benefit from improvement. But your behavior, mood and anxiety appear to have gotten better to the extent that you may not need to be away from home in a 24 hour facility.

While we agree with the plan of your provider to continue therapy, the current clinical information does not show that your condition meets the guidelines above for further Mental Health Residential care.

You can safely and effectively transition to mental health partial hospital treatment, where you go to the program 20 or more hours per week. Please talk to your provider about your care.

If you would like general information about the guidelines used for this decision, please visit https://www.providerexpress.com/contenVope-provexpr/us/en/clinicalresources/ guidelines-policies.html. To get a copy of the specific guideline used for this decision free of charge, please call us at 1-866-556-8166.

This determination does not mean that you do not require additional health care, or that you need to be discharged. Decisions about continuation of treatment should be made by you and your provider. The purpose of this letter is to inform you that, based on my review of the available information, I have determined that

> coverage is not available under your benefit plan for your admission to Waterfall Canyon Academy INC for dates of service 01/29/2025 forward. On 02/0312025 01:45 PM CST we notified your provider of this determination by telephone.

59. In response to United's denial, Plaintiff submitted an appeal dated March 27, 2025, signed by Eric S. Eric S. specified that the appeal was for January 29, 2025 to discharge, as A.S. was still receiving residential treatment at Waterfall.

60. Among other things, Eric S. pointed out that UBH's reviewer, who did not use a full name to allow him to determine the reviewer's credentials and experience, had asserted that the denial was for A.S.'s "admission" to Waterfall, when A.S. had long since been admitted and receiving treatment from Waterfall.

61. Eric S. further:

a. Reminded United that under the Employee Retirement Income Security Act of 1974 (ERISA), he was entitled to a response from United that was clear, that specifically stated the reasons for the determination, referenced the plain language on which United's decision was based, and explains what other information he could provide in order to perfect his claims;

b. Requested a physical copy of all documentation used for the initial determination and level one appeal determination, as well as the reviewer's name, credentials and experience;

c. Provided a detailed history of A.S., including many details related to A.S.'s physical and mental health;

d. Quoted and attached a mental health professional's psychological evaluation of A.S. that explained the reasons why A.S.'s care at Waterfall was necessary;

e. Quoted and attached medical records from Waterfall that set out in great detail the reasons why the level of care at Waterfall was medically necessary for A.S., including extensive treatment and evaluation notes specific to A.S. and need for continuing care at the level provided by Waterfall;

f. Provided a detailed analysis explaining how A.S. met and continued to meet the CALOCUS-CASII criteria for the level of care received at Waterfall;

g. Requested United assign a reviewer who is board certified in child and adolescent psychiatry and has experience treating children and adolescents with the diagnoses A.S. received;

h. Requested United conduct a comparative parity analysis to determine whether or not the Plan was truly being administered in compliance with the MHPAEA and provide his with physical copies of any documentation used; and

i. Requested a physical copy of all documentation used for the initial determination and level one appeal determination, as well as the reviewer's name, credentials and experience.

62. Eric S. further identified specific concerns about the quality of UBH's determination under the CALOCUS-CASII, pointing out that a court had found that United's use of vague, medically meaningless terms like "you are better" did not provide a credible basis to deny medical necessity.

63. More specifically, Eric S. pointed out that:

> We know the reviewer utilized CALOCUS-CASII and failed to provide a score, which that guideline uses. The UBH reviewer also failed to provide evidence of

> the clinical records used to base his/her determination off, but without specific reference to which records were used, there is no way to determine just how many violations under the Wit ruling UBH engaged in. However, it seems to me that UBH is guilty of the same violations as United Healthcare was in the following areas: (1) overemphasizing acuity and crisis stabilization over effective treatment of the patient's underlying condition, (2) failing to address the effective treatment of co-occurring conditions, (3) failing to err on the side of caution in favor of a higher level of care when there is ambiguity and pushing patients to lower levels of care where such a transition is safe even if the lower level of care is likely to be less effective, (4) precluding coverage for treatment to maintain level of function, (6) failing to address the unique needs of patients to receive intensive treatment over a sustained period of time, and (8) imposing mandatory prerequisites rather than utilizing a multidimensional approach.

64. Eric S. further noted United/UBH's use of terms like A.S. was "doing better" as justification to deny the medical necessity of A.S.'s treatment.

65. Eric S. attached, among other things, a psychological report about A.S.'s diagnoses and symptoms and the necessity for continuing care at Waterfall and nearly 300 pages of treatment notes and other records from Waterfall regarding A.S.'s care.

66. In a letter dated April 14, 2025 from UBH, UBH denied the appeal, stating in relevant part:

> United Behavioral Health (UBH) is responsible for making benefit coverage determinations for mental health and substance use disorder services that are provided by your health plan. The availability of benefit coverage for a service is determined by the terms of your benefit plan. To review information about your specific plan coverage, please refer to the benefit information provided by your health plan.
>
> As requested, I as an UBH employee [sic], have completed an appeal/grievance review on a request we received 04/04/2025. This review included an examination of the following information: Optum Case Notes, Provider Records, Appeal Letter from Provider, and the Applicable Guideline.
>
> After fully investigating the substance of the appeal/grievance, including all aspects of clinical care involved in this treatment episode I have determined that benefit coverage is not available for the following reason(s):

On appeal, we have upheld the noncoverage determination of the medical services requested, Mental Health Residential, where you live at the facility and get 24-hour care for your condition, as of 01/29/2025.

Your child was being treated for Developmental Disorder. This is a problem with normal growth and development. Your child was also being treated for a problem with controlling behaviors. Your child was also being treated for Attention/Deficit Disorder (ADHD). This is a problem with Attention and/or Hyperactivity.

Your provider's request was reviewed. We reviewed the following documents submitted by you and your child's provider: intake documentation, group and individual therapy notes, medication orders, legal documents, appeal letter. Based on the clinical information provided, your current condition did not meet the American Association of Community Psychiatrists CALOCUS-CASIl Child and Adolescent Level of Care/Service Intensity Utilization System (CALOCUS-CASII) for Level 5, which is applicable for the Mental Health Residential Level of Care, because:

- Your child's record shows that [A.S.] was doing better.
- Your child was less anxious; [A.S.'s] mood had improved as well as his behavior.
- Your child was using skills [A.S.] had learned in the program.
- Your child was engaged in treatment and compliant with all treatment recommendations.
- Your child's behavior was safe and predictable.
- Your child was respectful to staff.
- Your child was better at school.
- Your child's records show that family is involved, and are supportive of your child's recovery

The clinical information does not show that your child's condition met the guidelines above for further Mental Health Residential Care.

Your child could have safely and effectively transitioned to a less restrictive level of care.

Please talk to your child's provider about his care.

lf you would like general information about the guidelines used for this decision, please visit https://www. providerexpress. com/conten/ope-provexpr/us/en/clinicalresources/ guidelines-policies. html.

To get a copy of the specific guideline used for this decision free of charge, please call us at 1-866-556-8166.

> This determination does not mean that you do not require additional health care, or that you need to be discharged. Decisions about continuation of treatment should be made by you and your provider. The purpose of this letter is to inform you that based on my review of the available information; I have determined that benefit coverage is not available for your admission to Waterfall Canyon Academy INC for the following date(s) of service: 01/29/2025 through 02/28/2025.

67. In a letter dated June 8, 2025, in a letter signed by Eric S., Plaintiff filed a second level appeal of United's denial of coverage for A.S.'s treatment at Waterfall from January 29, 2025 to discharge.

68. Eric S. noted that autism and ADHD were not A.S.'s only diagnoses, and that ADHD was not the primary diagnosis, which evidenced a lack of attention by the reviewer to A.S.'s particular treatment needs, which included treatment for various serious mental health disorders.

69. Eric S. further noted that United had not offered any meaningful response to the extensive evidence of medical necessity Eric S. had presented.

70. Most saliently, Eric S. noted that the reviewer had failed to provide a score for the CALOCUS-CASII, even after Plaintiff had provided a thorough analysis in the first appeal showing that under that scale, A.S.'s level of treatment at Waterfall was appropriate.

71. Eric S. noted that the failure to score the CALOCUS-CASII or point to any evidence specially supporting any score, was a failure to provide clear and specific reasons for the denial.

72. Eric S. further expressed concern that the review who responded to the first appeal, was not necessarily qualified, as United had not provided any information about the reviewer's clinical experience.

73. Eric S. also pointed out that United/UBH was aware that the narrative provided in the first appeal denial was not sufficient to support a denial for medical necessity. For example, Eric S. pointed to a Fifth Circuit case that found language similar to that in United denial of A.S.'s care to be lacking merit for denying benefits. That Court found that conclusory, non-medical statements akin to "your were doing better," or "you were getting better," or "your mood had improved" were insufficiently clear, particularly when offered in response to detailed medical records provided by plan participants.

74. Aside from that case, Eric S. analyzed the bullet pointed list provided in the first level appeal denial and pointed out that none of those points were founded on medical evidence and that United had made no effort to point to any record it had been provided to support those conclusory statements.

75. Eric S. noted that United had failed to conduct a parity analysis under the MHPAEA or answer any of the evidence-based concerns that he had raised about MHPAEA violations in the first appeal.

76. Eric S. noted at several points that UBH/United's denial letter appeared to be a "form letter" or a template letter that UBH had placed A.S.'s name into.

77. Eric S. again pointed out the substantial evidence that he had submitted supporting the conclusion that A.S.'s treatment at Waterfall was medically necessary that United had failed to respond to in any meaningful way.

78. Eric S. further pointed out that UBH had repeatedly required Plaintiff and Waterfall to send a complete set of medical records for every billing submitted to UBH, even

though UBH had the records previously submitted and should have only requested any additional records. This practice was a costly one for Plaintiff and Waterfall.

79. Finally, Eric S. reiterated his CALOCUS-CASII analysis from the first level appeal.

80. United/UBH failed to respond to Plaintiff's second level appeal. As the Plan required United to respond within 60 days, United's failure to respond was, in effect, a denial.

*Present Action*

81. As set forth above, Plaintiffs exhausted their pre-litigation appeal obligations under the terms of the Plan and ERISA.

82. The denial by United/the Plan of benefits solely and directly caused Plaintiffs to incur over a significant amount in expenses for A.S.'s treatment at Waterfall that should have been paid as benefits from the Plan.

83. For all of the reasons set out in Plaintiffs' prior communications with United, and for all of the reasons set forth herein, those denials were wrongful and violated the MHPAEA.

84. After receiving the denials, litigation was Plaintiff's only option to enforce their right to benefits owing under the Plan and seek reimbursement of expenses under the terms of the Plan (as written or as reformed or required by MHPAEA), and/or under the MHPAEA amendments to ERISA.

85. Plaintiff thereafter retained the undersigned to pursue their rights and remedies under ERISA.

86. The remedies Plaintiffs seek herein are for the benefits due and pursuant to 29 U.S.C. § 1132(a)(1)(B) and alternatively for appropriate equitable relief under 29 U.S.C. §

1132(a)(3) based on United's violation of the Mental Health Parity and Addiction Equity Act of 2008, as well as pre-judgment interest, recoverable fees under 29 U.S.C. § 1132(g), and an award of costs and expenses under 29 U.S.C. § 1132(g) and other applicable law.

87. Plaintiffs do not seek double recovery.

**FIRST CAUSE OF ACTION**

**(Claim for Recovery of Benefits Under 29 U.S.C. § 1132(a)(1)(B))**

88. All allegations of this Complaint are incorporated here as though fully set forth herein.

89. ERISA imposes higher-than-marketplace quality standards on insurers and plan administrators. It sets forth a special standard of care upon plan fiduciaries such as United, acting as agent of the Plan, to "discharge [its] duties in respect to claims processing solely in the interests of the participants and beneficiaries" of the Plan. 29 U.S.C. § 1104(a)(1).

90. United and the Plan wrongly completely denied coverage and underpaid coverage for A.S.'s treatment at Waterfall in violation of the terms of the Plan. The Plan promise benefits to employees and their dependents for medically necessary treatment of mental health disorders, which was the case for A.S.'s treatment at Waterfall, as well as promising to cover out-of-network providers at in-network rates in circumstances like those presented with A.S.'s care at Waterfall.

91. ERISA also underscores the particular importance of accurate claims processing and evaluation by requiring that administrators provide a "full and fair review" of claim denials and to engage in a meaningful dialogue with Plaintiffs in the pre-litigation appeal process.

92. United's claim and appeal denial letters for both the denied SCA request and the medical necessity denial demonstrate the absence of a meaningful analysis of Plaintiff's claims and appeals. Among other things, United Plan did not meaningfully engage with or fully respond to the extensive facts and arguments presented in the appeals process.

93. United breached its fiduciary duties to Plaintiff when it failed to comply with its obligations under 29 U.S.C. § 1104 and 29 U.S.C. § 1133 to act solely in A.S.'s interest and for the exclusive purpose of providing benefits to ERISA participants and beneficiaries, to produce copies of relevant documents and information to claimants upon request, and to provide a full and fair review of A.S.'s claims.

94. The actions of United Plan in denying and underpaying benefits for A.S.'s treatment are a violation of the terms of the Plan, as written and/or as reformed as required or permitted under ERISA.

## SECOND CAUSE OF ACTION

### (Violation of the Mental Health Parity and Addiction Equity Act (29 U.S.C. § 1132(a)(3))

95. All allegations of this Complaint are incorporated here as though fully set forth herein.

96. The MHPAEA is incorporated into ERISA and is enforceable by ERISA participants and beneficiaries as a requirement of both ERISA and the MHPAEA. The obligation to comply with both ERISA and the MHPAEA is part of United/the Plan's fiduciary duties.

97. Generally speaking, the MHPAEA requires ERISA plans to provide no less generous coverage for treatment of mental health and substance use disorders than they provide for treatment of medical/surgical disorders.

98. The MHPAEA prohibits ERISA plans from imposing treatment limitations on mental health or substance use disorder benefits that are more restrictive than the predominant treatment limitations applied to substantially all medical/surgical benefits and makes illegal separate treatment limitations that are applicable only to mental health or substance use disorder benefits. 29 U.S.C. § 1185a(a)(3)(A)(ii).

99. Impermissible nonquantitative treatment limitations (NQTLs) under the MHPAEA include, but are not limited to, restrictions based on geographic location, facility type, provider specialty, or other criteria that limit the scope or duration of benefits for mental health or substance use disorder treatment. 29 C.F.R. § 2590.712(c)(4)(ii).

100. Comparable benefits offered by the Plan for medical/surgical treatment analogous to the benefits the Plan excluded for A.S.'s treatment include subacute inpatient treatment settings such as skilled nursing facilities, inpatient rehabilitation facilities, etc.

101. The Plan does not exclude coverage for medically necessary care of medical/surgical conditions based on geographic location, facility type, provider specialty, or other criteria in the manner claimed by United for treatment A.S. received at Waterfall.

102. Upon information and belief, United/the Plan's denial of coverage also violated the MHPAEA in application or effect. Because United/the Plan declined to produce the requested documents and materials requested by Plaintiffs, further discovery is needed to resolve this aspect of Plaintiffs' claims.

103. For example, United maintained a network of mental health providers that was not at parity with comparable medical/surgical providers, increasing the likelihood that

participants and beneficiaries seeking mental health treatment were more likely to have to seek out-of-network services than those seeking comparable medical/surgical services.

104. United are in violation of 29 C.F.R. § 2590.712(c)(4)(i) because the terms of the Plan, as written or in operation, use processes, strategies, standards, or other factors to limit coverage for mental health or substance use disorder treatment in a way that is inconsistent with, and more stringently applied to, the processes, strategies, standards, or other factors used to limit coverage for medical/surgical treatment in the same classification.

105. Plaintiffs expressly requested United to perform a MHPAEA analysis of the Plan. They expressed serious concern that United was violating the statute and asked for a response using specific and direct examples. United failed or declined to do this and failed or declined to even address the MHPAEA in its Denial Letters.

106. These MHPAEA violations by United are breaches of fiduciary duty and give Plaintiffs the right to obtain appropriate equitable remedies as provided under 29 U.S.C. § 1132(a)(3) including, but not limited to:

(a) A declaration that the actions of United violated the MHPAEA;

(b) An injunction ordering United to cease violating the MHPAEA and requiring compliance with the statute;

(c) An Order requiring the reformation of the terms of the Plan and the medical necessity criteria utilized by United to interpret and apply the terms of the Plan to ensure compliance with the MHPAEA;

(d) An Order requiring disgorgement of funds obtained or retained by United as a result of their violations of the MHPAEA;

(e) An Order requiring an accounting by United of the funds wrongly withheld by each Defendant from participants and beneficiaries of the Plan as a result of United' violations of the MHPAEA;

(f) An Order based on the equitable remedy of surcharge requiring United to provide payment to Plaintiffs as make-whole relief for their loss;

(g) An Order equitably estopping United from denying Plaintiffs' claims in violation of the MHPAEA; and

(h) An Order providing restitution from United to Plaintiffs for their loss arising out of United' violations of the MHPAEA and unjust enrichment.

107. In addition, Plaintiffs are entitled to an award of pre-judgment interest and attorney fees and costs pursuant to 29 U.S.C. § 1132(g).

WHEREFORE, Plaintiffs seek relief as follows:

1. Judgment in the total amount paid for A.S.'s treatment at Waterfall;
2. Pre- and post-judgment interest to the date of payment;
3. Appropriate equitable relief under 29 U.S.C. § 1132(a)(3) as outlined under Plaintiff's Second Cause of Action;
4. Recoverable fees and costs incurred pursuant to 29 U.S.C. § 1132(g); and
5. For such further relief as the Court deems just and proper.

DATED this 2nd day of September, 2026.

*/s/ John M. Mejia*
John M. Mejía
Anna P. Christiansen
*Attorneys for Plaintiffs*